UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED 08 FEB 15 PM 12:52
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No. 08 MJ 0445 |
| Plaintiff, | |
| v. | COMPLAINT FOR VIOLATION OF |
| Def 1) Gabriel CORREA-Contreras | |
| Def 2) Jose TORRES-Garcia | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(iii) |
| Def 3) Benita VALENCIA-Salomon | Harboring and Concealing (Felony) |
| Def 4) Ricardo SOTO-Fernandez | |
| Def 5) Virginia FERNANDEZ | |
| Def 6) Oscar MORALES-Barajas | |
| Def 7) Sonia Angelica SANCHEZ-Perez | |
| Def 8) Alfredo AGUILAR-Morales | |
| Def 9) Anthony MORALES | |
| Defendants | |

The undersigned complainant, being duly sworn, states:

On or about **February 13, 2008** within the Southern District of California, defendants **Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES**, knowing and in reckless disregard of the fact that certain aliens, namely, **Mauro LUNA-Bribiezca, Salvador PEREZ-Gomez, Jose Daniel ANAYA-Silva, Reynaldo CRUZ-Chavez, Paula MATA-Avana, Maria MATA-Jimenez, Pedro RAMIREZ-Garcia, Javier DIAZ-Morales, Miguel SOTO-Davalos, and Lorenzo DIAZ-Gonzalez**, had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection said aliens, and attempt to conceal, harbor and shield from detection said aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Roberto Del Villar
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **15th** DAY OF **FEBRUARY, 2008**

Anthony J. Battaglia
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT RE:
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Mauro LUNA-Bribiezca, Salvador PEREZ-Gomez, Daniel ANAYA-Silva, Reynaldo CRUZ-Chavez, Paula MATA-Avana, Maria MATA-Jimenez, Pedro RAMIREZ-Garcia, Javier DIAZ-Morales, Miguel SOTO-Davalos,** and **Lorenzo DIAZ-Gonzalez,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144G.

On February 13, 2008, Supervisory Border Patrol Agent (SBPA) R. Del Villar, SBPA A. Martinez, and Lead Border Patrol Agent (LBPA) F. Padilla were assigned to conduct plainclothes operation in the Imperial Beach Station's area of responsibility.

On this date, Agent Del Villar received information from three separate sources of information, herein identified as SOI-1, SOI-2 and SOI-3, that four previously deported illegal aliens from Mexico were illegally present in the United States and actively involved in an alien smuggling origination (ASO) currently smuggling illegal aliens into the United States from Mexico. SOI-1 identified four specific load house locations within the San Ysidro, California area and four specific individuals. SOI-2 identified two of the same specific load house locations and the same four individuals. SOI-3 identified one of the same specific load house locations and the same four individuals. These reports indicated that these individuals were involved in alien smuggling, and the following four individuals were using the following four associated addresses to harbor and conceal recently smuggled illegal aliens:

DEFENDANTS: **Gabriel CORREA-Contreras**, aka: "El Guero Tortas,"
              **Jose TORRES-Garcia** aka: "El Yany"
              **Oscar MORALES-Barrajas** aka: "El Negro"
DEFENDANT:   **Martin BAHENA-Moreno**, aka: "El Malo"   (see G-166 BRF0802000306)

LOCATION #1: Economy Inn, 230 Villa de San Ysidro
LOCATION #2: 282 West Calle Primera San Ysidro
LOCATION #3: 216 West Calle Primera, San Ysidro
LOCATION #4: 3540 Sunset Lane San Ysidro

Agent Del Villar conducted record queries through approved DHS systems and confirmed the identity and criminal affiliations of these individuals. Agent Del Villar was also able to confirm that three of four suspects were involved in previous alien smuggling evolutions in the past. Three of the suspects are known alien smuggler load drivers who have failed to yield to Border Patrol enforcement stops in the past. All four suspects were previously deported from the United States, making their re-entry and presence in the United States a felony. A review of DHS databases indicated that none of these four suspects had requested or been granted permission to re-enter the United States.

Agent Del Villar was also able to identify **CORREA** as a smuggler known to him from an encounter with him in July 2007. Agent Del Villar apprehended **CORREA** during that occasion and personally processed him for removal proceedings after arresting him for alien smuggling. **CORREA** admitted to being involved in alien smuggling. **CORREA** was apprehended with two unaccompanied female children during that time. Four vehicles involved in alien smuggling were seized during that event.

2

**CONTINUATION OF COMPLAINT RE:**
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

Agents Del Villar, Padilla and Martinez prepared to conduct initial intelligence gathering surveillance at these four locations, when at approximately 4:00 AM, Agent Del Villar received a request for assistance regarding an agent involved shooting at one of the previously identified locations, the Economy Inn at 230 Villa de San Ysidro. The events surrounding the shooting were in response to an alien smuggling event which involved a dangerous high-speed pursuit, load vehicle crash and subsequent follow-up investigation, as depicted under G-166 event number BRF0802000306. Upon arriving at the scene of the shooting, Agent Del Villar learned that an alien smuggler identified as **Martin BAHENA-Moreno**, aka: "El Malo" was the individual shot by the agent. Further, Agent Del Villar was informed that there were at least four illegal aliens already in custody in reference to this event.

At approximately 9:10 AM, Agents Del Villar, Martinez and Padilla responded to 3540 Sunset Lane to perform surveillance operations on the residence. Additional resources were requested. Agents assigned to the San Diego Sector Smuggling Interdiction Group (SIG), many of whom were already assisting with the scene of the shooting responded to assist.

Upon arriving at the residence at about 9:30 AM, agents noticed a burgundy Nissan Maxima bearing California license plates in the driveway. The Nissan's rear suspension presented an obviously modified stance. The rear wheel-well sat significantly higher above the tires than did the front. Modifications to vehicle's rear suspensions are common in alien smuggling conveyances, in an effort to present a level riding appearance when carrying an abundance of concealed weight, such as with illegal aliens in the trunk. The Nissan only remained at the residence for a short while.

Agents drove to 216 West Calle Primera. Upon approaching the vicinity of 216 West Calle Primera at about 9:40 AM, agents noticed the burgundy Nissan drive past their location. Agents were able to observe that it bore the same license plates as the Nissan observed parked at the previous residence. Agent Martinez also recognized the driver of the Nissan as being **Jose TORRES-Garcia**, aka: "El Yani."

Agents followed the Nissan west on Calle Primera for about one quarter of a mile. Agents observed **TORRES** parked the Nissan alongside the 216 West Calle Primera residence. Agents observed **TORRES** enter the residence.

Agent Del Villar had also been informed by the aforementioned SOIs as well as other separate sources that **TORRES** was frequently armed. The events leading to the shooting of **BAHENA** were not yet fully known because the investigation was ongoing. Members of this ASO are known to employ dangerous, aggressive and violent tactics to avoid apprehension or to facilitate their escape from custody.

Del Villar and Padilla decided to conduct a knock and talk on the 216 West Calle Primera residence. Agents Del Villar and Padilla were wearing civilian attire, DHS raid jackets, and each had their Agency badges displayed. Patrol Agent in Charge of the Imperial Beach Border Patrol Station M. Corley and Supervisory Border Patrol Agent M. Hansen from SIG Squad 4 provided perimeter security, maintaining visual observation of the rear and sides of the residence. Agent Corley was in full Border Patrol uniform, Agent Hansen was in plainclothes with DHS badge prominently displayed.

At about 9:45 AM, Agent Del Villar knocked on the door and identified himself as a Border Patrol Agent. As the door was being opened, Agent Del Villar immediately recognized **Gabriel CORREA-Contreras**, aka: "El Guero Tortas." Agent Del Villar identified himself as a United States Border Patrol Agent. Agent Del Villar did not issue any commands to **CORREA** and his weapon was holstered. In response to seeing Agent Del

CONTINUATION OF COMPLAINT RE:
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

Villar, **CORREA** immediately place his hands behind the back of his neck while getting on his knees at the threshold of the door, just inside the house.

Agent Del Villar asked **CORREA** if he remembered him as he observed him getting on his knees. **CORREA** smiled at Agent Del Villar, which struck Agent Del Villar odd considering the circumstances. Agent Del Villar observed that the portions of the residence within his view were completely devoid of furnishings. This is consistent with alien smuggling load houses, which are used solely as stash houses to conceal illegal aliens, and not as a place of residence. Agent Del Villar requested **CORREA's** consent to come inside. **CORREA** gave consent to Agent Del Villar to enter. As Agent Del Villar was about to step inside, Agent Padilla, who was standing to the side of the doorway alerted Agent Del Villar that there was an individual hiding against the wall directly behind the door he was about to enter. Knowing that **TORRES** was somewhere inside the residence, since he had entered the residence less than thirty seconds ago, Agent Del Villar reacted immediately thinking he was being ambushed.

Agent Del Villar placed his right hand on **CORREA's** shoulder and peered around the door. He turned to the individual hiding behind the door and immediately recognized him as **JoseTORRES-Garcia**. Agent Del Villar told **TORRES** to get out from behind the door and into his view. TORRES complied. Agent Del Villar questioned both individuals as their citizenship and immigration status. **TORRES** and **CORREA** stated that they were citizens of Mexico without proper documentation to enter or remain in the United States. Agents Del Villar and Padilla escorted **TORRES** and **CORREA** outside and informed them that they were under arrest for illegal entry, suspicion of illegal re-entry and suspicion of alien smuggling.

Border Patrol Agent L. Pino was conducting surveillance on the 282 Calle Primera location. At approximately 11:15 AM, Agent Padilla returned to the residence of 3540 Sunset Lane, San Ysidro, California to conduct further surveillance.

At about 12:00 PM, Patrol Agent in Charge (PAIC) Corley, SIG Group Commander M. Dunbar, SBPA Martinez, Agents Ortega and Ammons and LBPA Padilla responded to 3540 Sunset Lane to execute a knock and talk.

LBPA Padilla knocked on the door and identified himself as a Border Patrol Agent. A female later identified as a defendant, **Benita VALENCIA-Salomon,** opened the door. LBPA Padilla asked **VALENCIA** if she was the tenant of the residence and she responded "yes." LBPA Padilla asked **VALENCIA** for consent to search the residence and **VALENCIA** granted consent.

As LBPA Padilla searched the residence, he noticed that one of the doors did not have a door knob and was secured by a chain door lock from the outside. LBPA Padilla unlocked the door and noticed two male subjects on the floor and one male subject in the restroom. LBPA Padilla noticed that the clothing that the three male subjects were wearing was wet and muddy. LBPA Padilla also noticed that the males subjects were hang drying their shoes laces in the room. In LBPA Padilla experience, it is common for undocumented aliens who have just crossed illegally into the United States to have wet and muddy clothing. LBPA Padilla identified himself as a Border Patrol Agent to the three subjects and questioned each of them as to their citizenship. Each of the three subjects, later identified as witnesses Mauro LUNA-Bribiesca, Jose Daniel ANAYA-Silva and Salvador PEREZ-Gomez, freely admitted to being citizens and nationals of Mexico without any immigration documents allowing them to be in or remain in the United States legally. All three individuals were placed under arrest.

CONTINUATION OF COMPLAINT RE:
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

LBPA Padilla questioned **VALENCIA** as to her citizenship and immigration status. **VALENCIA** freely admitted to being a citizen of Mexico without any immigration documents allowing her to be in or remain in the United States legally. LBPA Padilla placed **VALENCIA** under arrest for illegal entry and suspicion of alien smuggling.

LBPA Padilla noticed that the room LUNA, AYALA, and PEREZ were in was unfurnished and the windows in the room and the bathroom were boarded up from the outside with wooden boards. It appeared to LBPA Padilla that the boards and the chain link lock were installed to prevent people from voluntarily leaving the room.

All individuals and a four-year-old child named Joselyn VALENCIA-Belez, **VALENCIA'S** step daughter, were transported to the Imperial Beach Border Patrol Station for processing.

Also on this date, Border Patrol Agents Worley and Foreman were performing uniformed patrol duties with the Imperial Beach Border Patrol Station Strike Team in the Imperial Beach Station area of responsibility. They were operating a fully marked Border Patrol vehicle. Agent Worley and Agent Foreman have received information and a photo of a suspected smuggler named **Oscar MORALES-Barajas**, aka "El Negro" from Agent Del Villar. Agent Del Villar had briefed Agent Worley of the possible presence of **MORALES** and possible suspected undocumented aliens being harbored at 282 West Calle Primera San Ysidro, California.

At about 12:05 PM, Agents Worley and Foreman received information from Agent Pino that a 2004 Honda Element bearing California license plates, entered the driveway of 282 West Calle Primera. Agent Pino noticed that numerous subjects were coming from the residence to the Honda in a hurried fashion. Agent Pino notified Agents Worley and Foreman that the vehicle was leaving the residence and that it was possibly loaded with undocumented aliens. Agents Foreman and Worley followed the Honda Element for approximately fifteen minutes to perform vehicle record checks. BPA Worley attempted numerous times to identify the driver but the driver continuously shielded his face with his left arm. BPA Worley eventually got a good look at the driver and recognized him as **Oscar MORALES-Barajas**, aka "El Negro." Agent Worley recognized **MORALES** from the picture that was given to him by Agent Del Villar. With the knowledge that **MORALES** was a previously deported illegal alien, and the belief that the vehicle was an alien smuggling conveyance, Agent Worley conducted a vehicle stop on the Honda Element on northbound Interstate 5 and Pacific Coast Highway. Agent Foreman served as back up. The Honda yielded without incident.

Agent Worley approached, identified himself as a Border Patrol Agent and questioned the driver, later identified as one of the defendants, **Oscar MORALES-Barajas**, as to his citizenship. **MORALES** stated that he was a citizen of Mexico and had an immigration document allowing him to be in the United States but did not have it on his person. Agent Worley then questioned the passenger, later identified as witness, **Pedro RAMIREZ-Garcia**, as to his citizenship. **RAMIREZ** freely admitted to being a citizen of Mexico without any immigration documents allowing him to enter or remain in the United States. Agent Foreman arrested **RAMIREZ** and placed him in his vehicle.

Agent Worley again questioned **MORALES** regarding his citizenship. **MORALES** recanted his first statement and freely admitted to being a citizen of Mexico illegally in the United States. Agenet Worley arrested **MORALES** and secured him in his vehicle. BPA Worley then questioned the female passenger seated in the back seat. The female, later identified as one of the defendants, **Sonia Angelica SANCHEZ-Perez**, stated that she was a citizen of Mexico and was a Lawful Permanent Resident. **SANCHEZ** stated that she did not have her immigration document on her person. Record checks on **SANCHEZ** revealed that she indeed was legally in the

CONTINUATION OF COMPLAINT RE:
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

United States. SANCHEZ was placed under arrest for suspicion of alien smuggling. SANCHEZ, her one year daughter, MORALES and RAMIREZ were transported to the Imperial Beach Border Patrol Station. All individuals arrived at the station at about 3:30 PM.

On February 13, 2008, at approximately 1:00 p.m., Supervisory Border Patrol Agent D. Boldt and Agent W. Hannan were conducting uniformed patrol duties with the Imperial Beach Border Patrol Station Strike Team in the Imperial Beach area of operations. Agent Boldt and Agent Hannan were notified via agency radio by Agent Pino of a silver 2003 Dodge Stratus, with dealer tags, which he observed pull into the driveway of a residence located at 282 Calle Primera, San Ysidro, California. Agent Pino observed the individuals entering the Silver Stratus also hurriedly moved from the residence to the vehicle, as if in the mistaken belief that they were easily identifiable by their mere appearance and manner of dress as illegal aliens. This is often the way smuggled aliens move about from location to location while being smuggled, attempting to maintain a low profile as they are uncomfortable with their surroundings and following the lead of the smuggler. Agent Pino observed the Stratus leave the driveway and noticed that the rear of the vehicle was riding lower than it had been when it arrived at the residence. Agent Pino continued to observe the vehicle as it traveled east on West Calle Primera and turned onto the Interstate 5 Freeway northbound.

Agent Monterrey followed the Stratus in his unmarked vehicle on northbound Interstate 5 to northbound Interstate 805. Agent Monterrey continued following the Stratus until Agent Boldt was able to acquire the Stratus near the El Cajon Boulevard exit. At approximately 1:25 p.m. Agent Boldt activated his emergency lights and siren approximately one half mile before the El Cajon Boulevard exit. The driver of the Stratus failed to yield, but did not drive in an otherwise evasive manner. The driver exited the freeway, proceeded eastbound on El Cajon Boulevard and turned south into the first shopping center driveway. After entering the parking lot the Stratus passed numerous empty parking spots, and began to drive back towards El Cajon Boulevard. It appeared as though the Stratus was heading towards the freeway or looking for a place to bail out. The driver of the Stratus continued to fail to yield at a slow speed. The Stratus came to a stop only after turning northbound in a row of cars in which Agent Monterrey was driving his unmarked sedan southbound limiting the Stratus' travel space.

Agent Boldt observed five subjects in the car as he exited his vehicle, several of which looked away and appeared nervous as he approached the Stratus. Agent Boldt identified himself as a Border Patrol Agent and individually questioned each subject as to their nationality and citizenship. The driver, identified as one of the defendants, **Alfredo AGUILAR-Morales**, and passengers, identified as witnesses Reynaldo CRUZ-Chavez, Paula MATA-Avana, Maria MATA-Jimenez, and Carlos Abel CERVANTES-Lopez, freely admitted to being citizens and nationals of Mexico, not in possession of any documents to enter or remain in the United States legally. Agent Boldt placed all five subjects under arrest and they were transported along with the 2003 Dodge Stratus to the Imperial Beach Border Patrol Station for processing. All subjects arrived at the Imperial Beach Station at approximately 4:00 p.m.

On February 13, 2008, Agent Bush was performing his duties with the Smuggling Interdiction Group (SIG) Human Trafficking (HT) when he began assisting the Imperial Beach Border Patrol Station Rapid Engagement Support Enforcement Team, (RESET). At approximately 1:30 PM, SBPA Martinez notified him via agency radio that a blue Toyota Camry bearing California license plates was observed in the driveway of 282 West Calle Primera and was leaving the residence, also possibly loaded with illegal aliens.

6

CEM

**CONTINUATION OF COMPLAINT RE:**
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

Agent Bush observed the Camry enter Interstate 5 from San Ysidro Boulevard and head in a northern direction. Agent Bush followed the Camry as it exited Interstate 5 and headed towards State Route 905 east bound. Based on the fact that two prior vehicles leaving this residence just recently resulted in the apprehension of three possible alien smugglers and five smuggled aliens, Agent Bush decided to investigate the occupants of the Camry. Agent Bush conducted a vehicle stop on the Camry and the vehicle yielded. Agent Bush noticed two persons in the Camry. Agent Bush approached the driver of the Camry and identified himself as a Border Patrol Agent. Agent Bush was wearing civilian attire and was displaying his agency badge. Agent Bush questioned the driver, later identified as one of the defendants, **Ricardo SOTO-Fernandez,** as to his citizenship. **SOTO** stated that he was a United States citizen. BPA Bush also questioned the passenger, later identified as one of the defendants, **Virginia FERNANDEZ,** as to her citizenship. **FERNANDEZ** stated that she was a citizen and national of the United States. Agent Bush contacted Agent Del Villar and notified him that **SOTO** and **FERNANDEZ** had just left their residence at 282 West Calle Primera. Agent Del Villar instructed Agent Bush to detain **SOTO** and his wife **FERNANDEZ** pending an investigation as to their role in alien smuggling activities observed at the residence. **FERNANDEZ** and **SOTO** were arrested and transported to the Imperial Beach Station for processing.

Agent Del Villar sought and obtained a federal search warrant, numbered 08MJ0420 for the 282 Calle Primera, San Ysidro, California residence. Agent Del Villar went to the Federal Building to secure the Search Warrant.

On February 13, 2008, at approximately 2:00 p.m., Agent Bush, Agent Ammons, Agent Worley, Agent Boldt and Agent Martinez responded to 282 West Calle Primera to observe whether any occupants of the residence were leaving or entering the residence, as they waited for a search warrant to be delivered.

Agent Worley, Agent Ammons, and Agent Bush walked towards the back of the residence when Agent Bush and Agent Worley encountered seven individuals attempting to conceal themselves behind a tarp directly behind the residence. Agents Worley, Bush, and Ammons identified themselves as Border Patrol Agents. Agent Bush questioned the seven individuals as to their citizenship. All seven individuals freely admitted to being citizens and nationals of Mexico without any immigration documents allowing them to be in the United States legally. A brief interview of these individuals revealed that they had in fact been in the 282 West Calle Primera residence only moments ago. All seven subjects were arrested and transported to the Imperial Beach Border Patrol Station. All seven individuals arrived at the Imperial Beach Border Patrol Station at about 5:00 p.m.

At approximately 2:30 p.m., Agent Bush encountered a male subject later identified as one of the defendants, **Anthony MORALES,** exit the residence at 282 West Calle Primera. Agent Bush identified himself as a Border Patrol Agent and questioned **MORALES** as to his citizenship. **MORALES** freely admitted that he was a United States citizen. Agent Bush questioned **MORALES** as to his purpose for being at the residence. **MORALES** stated that he lives at the residence with his grandparents. For officer safety, Agent Bush asked **MORALES** if he had any weapons on his person. **MORALES** stated that he did not. Agent Bush asked **MORALES** for consent to search him for weapons. **MORALES** gave consent. The search did not yield any weapons. Agent Bush asked **MORALES** if there were any other persons in the residence and **MORALES** stated that his younger brother, later identified as Mariano Saturnino ECHEVERRIA was inside the residence. ECHEVERRIA exited the residence shortly after on his own accord. ECHEVERRIA was questioned as to his citizenship by Agent Bush.

CONTINUATION OF COMPLAINT RE:
Gabriel CORREA-Contreras, Jose TORRES-Garcia, Benita VALENCIA-Salomon, Ricardo SOTO-Fernandez, Virginia FERNANDEZ, Oscar MORALES-Barajas, Sonia Angelica SANCHEZ-Perez, Alfredo AGUILAR-Morales, and Anthony MORALES

ECHEVERRIA stated that he was a United States citizen. Given that numerous vehicles that were observed leaving the residence and subsequently stopped by Border Patrol Agents with undocumented aliens inside them, as well as for officer safety, **MORALES** and ECHEVERRIA were secured and not allowed to re-enter the residence.

At approximately 5:00 p.m., Agent Medina, Agent Penta, Agent Jovero, Agent Day, Agent Bush, Agent Desrosiers, Agent Worley, Agent Ortega, ICE Special Agent J. Gonzalez, ICE Special Agent T. Dekreek and ICE Special Agent S. Lopez executed a search warrant on 282 West Calle Primera San Ysidro, California 92173. Agents seized various types of miscellaneous documents, receipts and U.S. currency.

All subjects that were taken in custody on February 13, 2008, that were related to the report that Agent Del Villar received early during the day were at one point transported to the Imperial Beach Border Patrol Station. Approximately twenty agents had to be redeployed unexpectedly during the operation. These agents were responsible for driving ten seized vehicles from their original location to the Imperial Beach Station, transport apprehended undocumented aliens, secure load houses, search, screen, and process apprehended aliens.

**DEFENDANT #1 STATEMENT:** Gabriel CORREA-Contreras aka: "El Guero Tortas"

The above stated defendant was advised of his Miranda Warnings and Consular Communication rights at approximately 1:00 p.m. and was willing to make a statement without an attorney present. The defendant freely admitted to being a citizen and national of Mexico without the proper documentation to enter or reside in the United States legally. The defendant admitted to illegally crossing the United States International Border on January 14, 2008 with two unaccompanied little children into the United States. He admitted to working for the alien smuggling organization (ASO) known as "Hotel Cortez" for approximately $100.00 per illegal alien. He was given three vehicles to smuggle illegal aliens into the United States by the "Hotel Cortez" A.S.O. The defendant admitted to smuggling illegal aliens on three separate events one specific event in which his girlfriend was shot several times in the stomach and was not given payment for smuggling the illegal aliens. The second event ended in a violent altercation as well along with not receiving payment. The third occasion he was payed $1,300.00 upon delivery of the illegal alien. When presented with a photo lineup the defendant was able to identify several individuals as alien smugglers: **Jose TORRES-Garcia aka "Yany", Oscar MORALES-Barajas "El Negro", Benita VALENCIA-Salomon "Yani's Girlfriend", Martin BAHENA-Moreno "Malo."**

**DEFENDANT #2 STATEMENT:** Jose TORRES-Garcia aka: "Yany"

The above stated defendant was advised of his Miranda Warnings and Consulate Communication rights at approximately 1:15 p.m and was willing to make a statement without an attorney present. The defendant also stated he was willing to speak to a consular officer of his country at this time. The defendant was allowed to talk to the Mexican Consulate officer later that day. The defendant stated that he was a citizen and national of Mexico born in Michoacan, Mexicoon February 12, 1978, and stated he does not possess any documents that would allow him to be present in the United States, nor have there been any petitions that have been filed on his

8

behalf. The defendant stated he illegally crossed the border by jumping the international boundary fence near San Ysidro, California in order to find work in the United States. The defendant freely admitted that he had previously been removed from the United States, and was told he could not return for five years. The defendant stated that illegal aliens voluntarily pay him $50 to smuggle them into the United States.

The defendant was presented with a series of labeled photographs of individuals and asked him if he knew the persons in the pictures. In the photograph labeled 1A, the defendant identified the person as "El Huero" Gabriel. In photograph labeled 2A, the defendant identified the person as being himself. In the photograph labeled 2B he identified the person as being his wife, Benita Valencia. In the photographs labeled 1B, 3B and 4B, he identified the persons as being the three illegal aliens that he was holding in his house. He further stated that he was paid $100 for smuggling the three individuals.

**DEFENDANT #3 STATEMENT:** Benita, VALENCIA-Salomon

At approximately 4:00 PM, the defendant was advised of her Miranda and Consulate Communication rights in the Spanish language. The defendant stated she understood her rights and was willing to answer questions without an attorney present. The defendant stated she was a citizen and national of Mexico without proper documentation to enter or remain in the United States. The defendant stated she was born in Sinaloa, Mexico on February 2, 1989. She stated she entered the United States illegally by foot through the border fence approximately eight days ago. The defendant stated that she has been voluntarily returned to Mexico once, and has no other immigration or criminal history. The defendant stated that she had some idea her boyfriend TORRES was involved in smuggling activity, she also stated that the lock that was securing the room where the aliens where kept was placed there for the alien's privacy. However the defendant later mentioned that her boyfriend must have placed the lock outside of the door where the aliens were kept because she was in the house about two weeks ago and the lock was not there before.

The defendant claims that she has never accompanied her boyfriend, TORRES when he picked-up or transported the undocumented aliens. The defendant stated she knew all along about her boyfriends smuggling activities and she enjoyed the fact that she was getting spoiled with presents of the proceeding of his smuggling activities.

**DEFENDANT #4 STATEMENT:** Ricardo, SOTO-Fernandez

At approximately 6:03 PM, the defendant was advised of his Miranda rights in the Spanish language. The defendant stated he understood his rights and was willing to make a statement without an attorney present. The defendant stated he was a citizen of the United States born in Cerradia, Puerto Rico, on March 26, 1934. He also stated he has never been arrested for alien smuggling and that this was his first time. When questioned about the illegal aliens in his home, he stated that they were from Mexico and that he doesn't know if they have any documents.

The defendant first confessed to harboring aliens for the past six to eight months, but then recanted to saying three years, but not many people. He also stated that the 12 people arrested in his house arrived last night. The defendant also stated that the individual known as "Malo" pays him $25 a person. The defendant stated he has known "Malo" for seven to eight months and that "Malo" brings him "Pollitos". He also stated that "Malo" picks up the guides and takes them back to Mexico. The defendant also mentioned that "Malo" arrives every three days at his house. The defendant also stated he has never taken people to Los Angeles, but that he has taken the guides back to Mexico.

At 2:48 AM, the defendant was advised of his rights to retain any material witnesses that would testify in his favor. The defendant stated that he did not wish to retain any material witnesses.

**DEFENDANT #5 STATEMENT: Virginia FERNANDEZ**

At approximately 7:25 PM, the defendant was advised of her Miranda rights in the English language. The defendant stated she understood her right and was willing to answer questions without an attorney present. The defendant stated she is a United States citizen and was born in Los Angeles, California. The defendant stated that she has never been arrested nor has she ever smuggled illegal aliens. She stated that she went to bed at approximately 2200 hours last night, when she woke up her husband Ricardo-SOTO-Fernandez told her that there were people in their garage. She also stated that they usually have illegal aliens in their garage approximately three times a week. She also stated that the payment they receive helps pay the bills. The defendant stated that she and SOTO have been doing this for about three years. A man named "Malo" brings them in through the garage. "Malo" pays her husband $40.00-$50.00 per person that they keep in the garage. The defendant stated she only saw "Malo" when he brought people over. The undocumented aliens are taken from San Diego, California to Los Angeles, California or Las Vegas, Nevada. The defendant stated she has never driven aliens north into those cities. The defendant also stated that the aliens usually slept in the garage and would defecate in the backyard or in a bucket located in the garage. She also said that SOTO would feed the aliens. She also stated she knew who the foot guides were but never talked to them. The defendant stated she knew that harboring illegal aliens was illegal.

The defendant was shown a photo line-up of individuals who are involved in the case. The defendant recognized a photo marked as 3E as a person who was in her garage and asked for water.

**DEFENDANT #6 STATEMENT: Oscar MORALES-Barajas**

At approximately 3:30 PM, the defendant was advised of his Miranda and Consular rights in the Spanish language. The defendant stated he understood these rights and was willing to answer questions without an attorney present. The defendant stated he was a citizen and national of Mexico without any documentation that would allow him to be or remain in the United States legally. The defendant stated he was born in Guadalajara, Jalisco, Mexico on January 11, 1975. The defendant stated he has used several nicknames in the past such as: Pelo, Moreno, El Sapo and El Negro. He stated that although he knew it was illegal, he crossed near Tecate, California. He illegally crossed the border on November 25th, 2007 at 2:00 AM.

The defendant stated he has never smuggled people into the United States, but has picked up illegal aliens from load houses in the past. He also stated that he has been arrested as a load driver in the past and sentenced to 15-22 days in jail. He stated he received a call from a smuggler who would pay him $100.00 to pick up an illegal alien and deliver him to Oceanside, California. He arrived at a house on Calle Primera. He stated he was to take the alien to Oceanside where his family was waiting and pick up $1,600.00 for the alien's smuggling fee. He would then deliver $1,500.00 (subtracting his $100.00 fee) to an unknown person on Palm or Palomar Avenue in Chula Vista, California.

During a photo lineup, the defendant identified photos marked as 1C; 2C; and 3C as himself, Sonia Sanchez (his girlfriend) and the individual being smuggled.

**DEFENDANT #7 STATEMENT: Sonia Angelica SANCHEZ-Perez**

At approximately 4:10 PM, the defendant was advised of her Miranda and Consular rights in the Spanish language. The defendant stated she understood her rights and was willing to answer questions at this time without an attorney present. The defendant stated she was a citizen and national of Mexico without any documentation that would allow her to be or remain in the United States legally. She stated she was born in Tijuana, Mexico and that she has been a Lawfully Admitted Permanent Resident for over 12 years.

The defendant identified MORALES in a picture lineup by number 3C (MORALES-Barajas, Oscar) as the person driving the vehicle. The subject stated that MORALES has been transporting undocumented aliens in the United States for over five years. She would go with MORALES to keep him company. MORALES would keep the money and pay her bills. She also identified Ricardo SOTO-Fernandez in a photo lineup by number 1F as the housekeeper where they picked up one undocumented alien. She also identified Pedro RAMIREZ-Garcia as the person she and MORALES picked up. The defendant admitted she knew that RAMIREZ did not have documents to enter or remain in the United States legally.

## DEFENDANT #8 STATEMENT: Alfredo AGUILAR-Morales

At approximately 8:30 PM, the defendant was advised of his Miranda and Consulate rights in the Spanish language. The defendant stated he understood these rights and was willing to answer questions without an attorney present. He admitted to being a citizen and national of Mexico without any documentation that would allow him to be or remain in the United States legally. He stated he was born in Tecate, Baja California Mexico on November 26, 1985. The defendant stated he was heading to El Cajon today with four other subjects. The defendant identified these subjects through photo lineup as 1D-4D. He stated he saw the four subjects walking on the side of the road and he could tell that they were illegal. He thought he would help them and transport them further north into the United States. The defendant self admitted that on February 13, 2008 he was knowingly transporting aliens that were illegally present in the United States.

## DEFENDANT #9 STATEMENT: Anthony MORALES

At approximately 5:30 AM, the defendant was advised of his Miranda rights in the English language. The defendant stated he understood his rights and was willing to answer questions without an attorney present. The defendant stated he was born in Los Angeles, California. The defendant stated he had been arrested for smuggling aliens and harboring them in his Grandparent's house. He stated he has been involved in this activity for approximately one year. The defendant was shown various photographs and identified three men that brought illegal aliens to his Grandparents house. The defendant was unsure of one man's name (1-A), but identified the other two as "El Negro" (3-C) and "Yani" (2-A). He stated that "El Negro" and "Yani" bring approximately three to four aliens per day to his Grandparent's house and throw them in the garage. They in return pay his Grandpa Ricardo Fernandez $50.00 USD for each person he hides. The defendant also stated he witnessed "El Negro" and "Yan" paying his Grandfather.

## MATERIAL WITNESS STATEMENTS:

Mauro LUNA-Bribiezca, Salvador PEREZ-Gomez, Jose Daniel ANAYA-Silva, Reynaldo CRUZ-Chavez, Paula MATA-Avana, Maria MATA-Jimenez, Pedro RAMIREZ-Garcia, Javier DIAZ-Morales, Miguel SOTO-Davalos, and Lorenzo DIAZ-Gonzalez, agree in summary that they are citizens and national of Mexico illegally present in the United States. They admit to entering the United States illegally. The material witnesses stated they were going to pay $1300.00 to $2000.00 (US) to be smuggled into the United States.